THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHARLES MANUELE, Relator, v. WILLIAM HUNT, as Warden of Attica State Prison, Defendant.

County Court, Wyoming County, November 13, 1934.

A. *Stanley Copeland,* for the relator.

*John J. Bennett, Attorney-General [George R. Van Alstyne, Assistant Attorney-General,* of counsel], for the respondent.

CONABLE, J.   The relator was on January 8, 1928, sentenced to the Elmira Reformatory for the crime of burglary in the third degree which carried a maximum term of five years.   On January 20, 1930, he was duly paroled.   On May 26, 1931, a warrant was issued by a member of the Parole Board to retake him to the reformatory.   On May 28, 1931, he was arrested and held by the sheriff of Niagara county.   He appears not to have been returned to Elmira but was tried upon an indictment by the grand jury of Niagara county charging grand larceny in the second degree.   On July 2, 1931, he was convicted by the County Court of Niagara county and sentenced to five years in Auburn Prison for the larceny. While he was in Auburn Prison, and on August 13, 1931, an order was made by the Commissioner of Corrections transferring him from Elmira to Auburn Prison upon his original sentence.   At that time he was declared delinquent and it was determined that he owed one year, five months and twelve days upon his original sentence.   He was before the Parole Board again June 10, 1932, when it was determined that his original sentence would expire July 2, 1932, and that he should begin his new sentence of five years on that day.

The relator asserts that since he was not physically taken back to Elmira Reformatory, the Parole Board was not authorized to require his incarceration in Auburn upon his original sentence prior to the beginning of his sentence for grand larceny in the second degree, particularly since it appeared that he had already been taken to Auburn upon the new sentence prior to the order transferring him there.   He points to section 283 of the Correction Law and asserts that that section is the sole authority under which he could be imprisoned upon his original sentence as a parole violator. He claims that since the record does not show strict compliance

with that section, he is entitled to his absolute discharge upon the expiration of his second sentence dating from the time he was received in Auburn Prison, July 2, 1931.

Prior to July 1, 1930, there were various Parole Boards throughout the State, one member of each of which was the warden or superintendent of the prison located in its district. On that date article 11 of the Executive Law, which set up one Parole Board, giving it jurisdiction of violations of parole throughout the State, became effective. By section 18 of the Executive Law, effective on the same date, all of the functions, powers and duties of parole work in relation to prisoners or inmates in the New York State Reformatory at Elmira, formerly vested in and exercised by the board of visitors thereof, were assigned to the State Parole Board. Section 280 of the Correction Law, which became effective April 16, 1931, made the State Board of Parole in the Executive Department the board of parole for Elmira Reformatory. On July 1, 1930, former section 697 of the Code of Criminal Procedure, which provided the former method of determination of violation of parole, was repealed.

It would, therefore, seem that under section 283 of the Correction Law, the State Board of Parole, or a member of it, now has authority to determine violations of parole and to administer all the functions, powers and duties of parole work in relation to inmates of the Elmira Reformatory.

The purpose of the laws relating to parole being to offer opportunities of reform for first offenders and in proper cases to mitigate the severity of their sentences, it seems to me that the laws in this regard should be liberally construed, and that the powers of the Board should not be limited by any unreasonable or technical interpretation of the law.

Section 2190 of the Penal Law provides that when a person under sentence for a felony afterwards commits any other felony, and is thereof convicted and sentenced to another term of imprisonment, the latter term shall not begin until the expiration of all terms of imprisonment to which he is already sentenced.

In this case the relator was on parole. He violated his parole. A warrant was issued for his retaking pursuant to section 283 of the Correction Law. That warrant was executed by the sheriff of Niagara county and he was held in a custody, which must be held to be the constructive custody of the Parole Board acting for the Elmira Reformatory. He was then under sentence to the Elmira Reformatory and the term of his imprisonment had not expired. He was bound, therefore, under section 2190 of the Penal Law, to serve the balance of that sentence before his new sentence should

begin. This was by operation of law and did not depend upon any action either of the sentencing court or of the Parole Board, except as the Board had power to determine what further favors might be extended to him. The relator was duly transferred by the Commissioner of Corrections from Elmira to Auburn upon his original sentence pursuant to the authority contained in section 296 of the Correction Law. It may be that this order should have been made prior to July second, and that the incarceration between July second and August thirteenth should have been in Elmira rather than in Auburn. This should not, however, serve to shorten his term upon the first sentence. If this was a serious violation of his rights, he could have, during the period of one month and eleven days, raised the question that his services should be in Elmira rather than in Auburn. He should not escape his service of the sentence which he was bound to serve in the first instance, except for the leniency of the statutes relating to parole, on account of any such technicality.

It seems to me that the case of *People ex rel. Newton* v. *Twombly* (228 N. Y. 33) is, in general, authority for this determination. In that case the relator was given an indeterminate sentence at Sing Sing. From there he was transferred to Great Meadow Prison, and, after about a year and one-half, was released on parole. He violated his parole and was sentenced under an assumed name to a term of four years in Sing Sing. About ten days after he began serving his sentence, his identity was discovered and the fact that he was a parole violator. Warrant for breach of parole was issued. He was declared delinquent. By virtue of the warrant he was taken back from Sing Sing to Great Meadow Prison where he appeared before the Board there and was transferred to Dannemora. The Special Term released him in a habeas corpus proceeding. This determination was affirmed by the Appellate Division, Justice John M. Kellogg dissenting (190 App. Div. 882). The Court of Appeals reversed the decision of the lower courts. The opinion of Justice Kellogg was not adopted as a whole by the Court of Appeals, but the conclusion arrived at is the same. The differences between this case and the one at bar are, *first*, that our relator was paroled from Elmira Reformatory instead of from a State prison, and, *second*, that during his term he was physically taken to the prison from which he had been paroled and before the Parole Board there, after starting to serve his second sentence. These differences do not seem to me of great importance considering that, under the law now effective, the State Board of Parole has all the jurisdiction formerly belonging to the local boards of parole, and considering the fact also that an inmate of Elmira Reformatory may be at any time transferred from the reformatory to a State prison and

there held under an indeterminate sentence, and that this may be done regardless of any delinquency or fault on the part of the prisoner.

There is one additional question which the relator raises. He was sentenced by the County Court of Niagara county to a definite term of five years. The commitment does not reveal that an information pursuant to section 1943 of the Penal Law was filed against him charging him with being a second offender nor did the court assume to inflict the additional punishment provided for a second offender by section 1941. He now asserts that his sentence was illegal and that it is the duty of the court in this habeas corpus proceeding to direct him returned to the County Court of Niagara county as having been illegally sentenced. It appeared upon the examination of relator under section 485-a of the Code of Criminal Procedure that he was not a first offender. He was, therefore, not entitled to be sentenced as such under the provisions of section 2189.

It was undoubtedly the duty of the district attorney of the county of Niagara to file an information It has at all times since July 2, 1931, been the duty of the warden to report his previous conviction to the district attorney of Niagara county. In appropriate proceedings the officials named may be compelled to perform their respective duties in this regard. If the information was, in fact, properly filed or if it should be hereafter filed, it could not result in a legal sentence of less than five years which is the sentence as it stands. There seems to be no reason why the relator should claim that he has been prejudiced by the failure of the district attorney of Niagara county to institute proceedings which might result in his receiving a much more drastic punishment. Under the circumstances I do not see that this court in this proceeding is constrained to hold that the sentence is illegal.

The respondent, the Warden of the Attica State Prison, being before the court in this proceeding, is hereby directed to call to the attention of the district attorney of Niagara county the fact that the relator is a second offender in accordance with his duty as prescribed by section 1943 of the Penal Law.

It appearing to me that relator is held pursuant to a valid commitment by a court having jurisdiction, namely, the commitment of the County Court of Niagara county, to serve a sentence of five years, which sentence did not begin to run until the expiration of his previous sentence as fixed by the Parole Board, he must be remanded to the custody of the warden of Attica Prison to complete his sentence. Let an order be prepared accordingly.